# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

ON REMAND

NO. 03-11-00669-CV

**Tom Bennett and James B. Bonham Corp., Appellants**

**v.**

**Larry Wayne Grant, Appellee**

FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT
NO. 8086, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

M E M O R A N D U M   O P I N I O N

This suit arises from a now decade-long dispute between cattle ranchers in San Saba. The case and the parties have wound their way through the Texas legal system many times, and the underlying factual dispute has been well chronicled in opinions from this Court and the Texas Supreme Court. *See Bennett v. Grant*, 460 S.W.3d 220 (Tex. App.—Austin 2015), *rev'd & remanded in part by* 525 S.W.3d 642 (Tex. 2017).[1]  In this latest iteration, the trial court awarded Larry Grant

---

[1] In the interest of brevity, we will not repeat the underlying facts in this opinion but refer the reader to the prior opinions of this Court and the Texas Supreme Court.  Other related cases in these two courts are *Bennett v. Reynolds*, No. 03-12-00568-CV, 2014 WL 4179452 (Tex. App.—Austin Aug. 22, 2014, no pet.) (mem. op); *Bennett v. Reynolds*, 440 S.W.3d 660 (Tex. App.—Austin 2011, no pet.); *Bennett v. Reynolds*, No. 03-05-00034-CV, 2010 WL 4670270 (Tex. App.—Austin Nov. 18, 2010, no pet.) (mem. op.); and *Bennett v. Reynolds*, 242 S.W.3d 866 (Tex. App.—Austin 2007), *rev'd & remanded in part by* 315 S.W.3d 867 (Tex. 2010).

actual and exemplary damages against Tom Bennett and James Bonham Corporation for malicious prosecution. On appeal, this Court affirmed the trial court's judgment, as reformed by remittitur, reducing the amount of exemplary damages awarded to Grant. *Bennett*, 460 S.W.3d at 258. The Texas Supreme Court affirmed this Court's decision, except for reversing the exemplary-damages portion of our judgment and remanding for a revised remittitur. *Bennett*, 525 S.W.3d at 653. This narrow issue—the proper amount of exemplary damages—is the only one now before us, in what should be the final chapter in this litigation. We will affirm the trial court's judgment conditioned on the filing of a remittitur that reduces the award of exemplary damages as to Bennett by $480,000 and the award of exemplary damages as to Bonham by $480,000 (reducing the exemplary-damages award against each from $512,109 to $32,109).

## PROCEDURAL HISTORY AND POSTURE ON REMAND

After Bennett appealed the trial court's judgment, this Court affirmed with the exception of the issue of exemplary damages. *Bennett*, 460 S.W.3d at 258. The Court concluded that the judgment's award of $1 million in exemplary damages against Bennett and $1 million in exemplary damages against Bonham exceeded permissible constitutional limits when compared to the $10,703 in actual damages awarded. *Id.* at 254. The Court, therefore, suggested a remittitur of $487,891 as to each defendant, resulting in a $512,109 exemplary damage award for Grant against each defendant, in addition to actual damages and sanctions awarded by the trial court. *Id.* The Court concluded that this amount created a ratio of 3:1 between actual/potential damages and exemplary damages, which passed constitutional muster. *Id.* The Court reached this conclusion based on cases from the United States Supreme Court indicating that courts could consider "the harm

likely to result from the defendant's conduct," as well as the harm that actually occurred, when calculating the ratio of actual to exemplary damages. *Id.* at 250-52 (citing *BMW of N. Am. v. Gore*, 517 U.S. 559, 580 (1996) (quoting *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 460 (1993))). Under this constitutional analysis, courts are to consider the difference between the exemplary damage award and harm actually suffered, as well as the harm "that would have ensued if the tortious plan had succeeded." *Id.* at 251.

Considering the harm "that would have ensued if [Bennett and Bonham's] tortious plan had succeeded," this Court concluded that Grant would have spent a minimum of two years in jail and, having been put there wrongfully, would have been entitled to payment from the State in the amount of $80,000 for each year of wrongful imprisonment, for a total of $160,000. *Id.* at 252. Combining this figure with Grant's $10,703 in actual damages awarded by the trial court, the Court evaluated the ratio of actual/potential damages to exemplary damages awarded and concluded that the only way to make the award comport with constitutional limitations was to reduce the $2 million exemplary-damages award by nearly $1 million, thereby achieving a 3:1 ratio. *Id.* at 254. Upon Grant's filing of the suggested remittitur in the trial court, this Court affirmed the trial court's judgment as reformed. *Id.* at 258. Bennett appealed to the Texas Supreme Court.

The Texas Supreme Court concluded that this Court did not go far enough in reducing Grant's award of exemplary damages. *Bennett*, 525 S.W.3d at 652. Although it affirmed this Court's conclusion that exemplary damages should be awarded against Bennett and Bonham, the court disagreed as to the appropriate test to be used when reviewing the ratio between actual/potential damages and exemplary damages. *Id.* The supreme court concluded that our evaluation of the "harm

3

likely to result from Bennett's conduct" should not have included the potential "consequences of wrongful imprisonment" but instead "should have only focused on the probable damages resulting from the malicious prosecution." *Id.* The high court reasoned that since Bennett's scheme was unlikely to lead to wrongful imprisonment due to the passing of the limitations period, damages for potential wrongful imprisonment should not have been considered. *Id.*

In remanding to this Court for consideration of a further suggestion of remittitur on exemplary damages, the supreme court indicated that "it is appropriate to consider, for example, that Grant would incur attorney fees in defending himself against criminal charges. It is also fair to consider time taken away from one's job by having to participate in criminal proceedings." *Id.*

It is against this backdrop that we now consider what further remittitur to suggest to Grant.

## ANALYSIS

We begin our analysis by focusing on two factors that the supreme court suggested we consider in determining "probable damages" to Grant as a result of Bennett's malicious prosecution. First, the supreme court suggested we consider the attorney fees that Grant would have likely incurred in defending himself against the criminal charges manufactured by Bennett. *Id.* at 653. Grant's actual damages at trial consisted of two elements: (1) $5,000 in mental anguish damages; and (2) $5,703 in attorney fees. The attorney-fee award represents the amount Grant actually paid his attorney to have the criminal charges against him dismissed. There are no additional, potential attorney fees that Grant would have incurred as "probable damages"—all charges were dropped as a result of the statute of limitations. We will therefore not include any amount of

4

attorney fees in calculating Grant's potential damages since they have already been awarded to him as actual damages.

The supreme court also indicated that we could consider "time taken away from [Grant's] job by having to participate in criminal proceedings." *Id.* Grant testified that he spent one day of travel to Corsicana in relation to the criminal proceedings and that he also spent money on gas to travel back and forth to a mental health facility in Brownwood one time as a result of Bennett's actions. It is not clear from Grant's testimony, however, that he actually missed work during these two days or, if he did, how much income he lost as a result. In fact, Grant testified that he was a self-employed carpenter at that time and that times were hard because he had to care for his wife who had been in a serious auto accident. Grant agreed on cross-examination at trial that "Mr. Bennett didn't cause [him] not to be able to work." In short, there is no testimony or evidence that Grant suffered potential damages by missing work as a result of the charges brought against him.[2]

Based on the record before us and the supreme court's directive on remand to only consider "probable damages" in this analysis, we must conclude that the record does not support an award of actual or probable damages beyond those already awarded by the trial court. As we held in our prior opinion, a ratio of 3:1 exemplary damages compared to the combined actual and potential damages passes constitutional muster. *See Bennett*, 460 S.W.3d at 254. Applying this ratio to the actual damages of $10,703 awarded to Grant yields constitutionally acceptable exemplary damages of $32,109 against each defendant.

---

[2] The only testimony in the record that supports actual or potential harm that the trial court did not already award Grant is that Grant traveled one day to Corsicana and one day to Brownwood. Presumably, Grant incurred expense for gas on those days, but we have no evidence in the record to support the amounts incurred and refuse to speculate as to those amounts.

Accordingly, we condition our affirmance on Grant's filing of a remittitur in the trial court, within 30 days of the date of this opinion, decreasing his award of exemplary damages by an additional $480,000 (to $32,109) per defendant. *See* Tex. R. App. P. 46.3. This remittitur would reduce the total exemplary-damages award from the $1,024,218 awarded in our prior opinion to a total of $64,218 ($32,109 against Bonham and $32,109 against Bennett).

### CONCLUSION

If Grant files this Court's suggested remittitur with the trial court within thirty days of the date of this opinion and notifies this Court of such, we will reform the trial court's judgment and affirm it as reformed. Otherwise, we will reverse the trial court's judgment as to the award of exemplary damages and remand the cause for a new determination of the amount of exemplary damages.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed Conditioned on Remittitur on Remand

Filed:   August 24, 2018

6